[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 29, whose birth name is Waugh, and the defendant husband, 39, married on June 1, 1991 in Sharon, Connecticut. They have one child, Nina Nastassja, born October 3, 1997. They filed a parenting plan dated July 14, 1999 and referred to as stipulation I. The court accepted same on July 21, 1999 when the trial commenced and finds it in the best interests of the child. The court indicated its approval and it is incorporated in the judgment. On July 22, 1999 the court found all of the allegations of the complaint proven and rendered a decree dissolving the marriage. The remaining financial issues were heard on September 1, and on September 2, 1999.
Additional facts were agreed upon and are set forth in the stipulation of facts dated July 14, 1999 and filed with the court on July 21, 1999, designated as Stipulation II. The court accepts CT Page 13163 all agreed upon facts recited therein. The same is incorporated in the judgment.
The parties filed a third Stipulation of Facts dated July 14, 1999, also filed with the court on July 21, 1999 designated as Stipulation III. The court accepts all agreed upon facts recited therein. The same is incorporated in the judgment.
The plaintiff received a B.A. degree in 1991 and an M.B.A. in 1995. The plaintiff attended N.Y.U. as a full time student in 1993 and 1994 for which the defendant bore most of the costs. Stipulation III states, on schedule B, that the plaintiff received as financial items:
 "Student loans $10,000.00 — $20,000.00 MBA/MA — N.Y.U./Columbia Summer School $53,845.00"
She was employed by a venture capital firm initially for less than a year. More recently she was employed by Paribas N.A. in New York City. She testified her salary was $75,000.00 in 1996, $95,000.00 in 1997 plus $20,000.00 bonus and $110,000.00 in 1998 without bonus. She left Paribas for ING Barings also located in New York City. The plaintiff began her current employment in June, 1999 with a base salary of $150,000.00 and is bonus eligible. She is provided family medial coverage. She leaves her home at 5:45 a.m. for work and leaves work around 5 p. m., (cf. ING employment letter, Defendants Exhibit D).
It is noted that the plaintiff ceased working in early September, 1997 due to her pregnancy, returning to work in January, 1998.
The defendant received an M.B.A. from N.Y.U. prior to the marriage. The defendant has been employed throughout the marriage except for a hiatus that occurred from March 31, 1999 until July, (Defendant's Exhibit I, termination letter). Stipulation III, Schedule A lists W-2 income for defendant from 1991 through 1998 totaling $1,510,890.00 with a low in 1993 of $108,073.00 and a high in 1997 of $439,170.00.
Currently, the defendant is an asset management consultant for Atlantic, LLC located in Greenwich, Connecticut receiving a gross fee of $12,500.00 and a net after taxes of $6,714.23. He received a $10,000.00 fee for a deal that closed in June and he expects another $10,000.00 for a deal that closed July 9. CT Page 13164
The defendant did not possess any assets at the time of the marriage. The defendant had assets of undisputed value totaling $211,543.00 at the time of the marriage. (Stipulation III, Schedule C) as well as a 12.5% interest in a GEI Family Partnership and 15% interest in another GEI Real Estate Partnership. The parties did not agree on values for the last two. The defendant is a limited partner in each. The first mentioned holds real estate located in Maine and the second holds a commercial building located in New Jersey. The court accepts the defendant's valuations of $68,250.00 and $66,202.00 for the respective interests including 35% minority discount. The defendant also has 13.2% interest in another family holding described on Stipulation III, Schedule C as "Imperatore Sussex (land) (13.2%) includes a 20% minority discount $96,000.00." The valuation was supported by expert testimony. This asset the defendant received during the marriage.
The court notes that during the marriage the plaintiff also received, as a gift, which she lists on her affidavit as:
 "Imperatore Sussex L.P. @ 4.4% of Partners stated Capital $107,726.00"
The defendant's expert valued her interest at $32,000.00 and the court accepts this lesser value.
The parties purchased the marital home located at 29 Tomac Avenue, Old Greenwich in 1993 and began renovation shortly thereafter. To finance the project they obtained a home equity loan for $175,000.00. At the time this dissolution action commenced, about $100,000.00 had been drawn. They also borrowed from the defendant's father, both executing a note in the principal sum of $110,000.00 to the order of the defendant's father (Defendant Exhibit C). The payee has begun suit against both makers in this venue. (CV 99 0171934). The defendant drew the remaining equity available immediately after being handed the dissolution service. The parties agree that the fair market value of the marital home is $1,050,000.00. It is currently subject to a first mortgage of about $372,000.00 and the home equity loan of $174,000.00. The net equity is $504,000.00. The plaintiff proposes that the residence be sold prior to when the child enters kindergarten in September 2002. The defendant proposes that it be placed on the market immediately. CT Page 13165
The plaintiff's evidence attempted to portray the defendant as an abusive husband. The plaintiff testified the defendant refused to go to her parents' home in Sharon for Thanksgiving in 1997. The defendant explained that he had been working very long hours since October, when the stock market slid and he was sick that morning. In May, 1999 the plaintiff described an episode that occurred while they were driving to the defendant's parents home in New Jersey, claiming the defendant directed invective towards her while pushing her into the dashboard. The defendant's version, equally credible, is that the plaintiff initiated the name calling and the pushing. The last episode was described by plaintiff as occurring in the home. The defendant denied it. The events do not equate fault with the causes of the break down in evaluating this testimony.
More convincing is the evidence the plaintiff produced to demonstrate that the defendant had begun directing his interest, affection and support toward a fellow female employee. Although the defendant denied any sexual relations prior to May 19, 1998, the court considers that his relationship with this other woman contributed to the breakdown.
The court has reviewed the evidence in light of the statutory criteria and relevant case law in arriving at the following orders:
1. Stipulation I, II and III are incorporated in the judgment and are so ordered as agreed upon.
2. The defendant is ordered to pay to the plaintiff the sum of $2,100.00 monthly as child support. A wage withholding order is entered. It may be contingent if the plaintiff executes the waiver and the advisement of rights is filed.
3. The plaintiff shall continue to carry the child on the medical insurance. The parties shall divide any deductibles or uninsured bill balances equally.
4. The defendant shall pay to the plaintiff, as periodic alimony, the sum of one dollar ($1.00) per year until the plaintiff's remarriage, the death of either party, further court order entered pursuant to § 46b-86, or October 1, 2005 when this order shall expire under any and all circumstances.
5. The marital residence located at 29 Tomac Avenue, Old CT Page 13166 Greenwich shall be placed on the market for sale immediately. Terms of sale, listing broker, and other conditions of sale shall be agreed upon by the parties. Either party may move for an articulation if agreement cannot be reached. Upon sale, from the proceeds after all costs of sale are paid, the defendant's share shall be charged with the draw he took from the equity credit line when he "maxed out" the line. The first mortgage balance and the remaining balance of the equity line of about $100,000.00 shall be paid from the proceeds. The court has examined the file CV 99 0171934. Both plaintiff and defendant have been defaulted for failure to plead. The court concludes that the obligation is owing. The note shall be paid from the proceeds of sale. The remaining proceeds shall be divided equally. Pending sale, the plaintiff shall have exclusive possession of the premises and shall pay the utilities, heat and necessary debt services.
6. The contents of the home shall become the sole property of the plaintiff, except for the items claimed by the defendant on his Schedule A attached to his claims for relief and appended hereto for reference as appendix A. If any such listed items are disputed by the plaintiff, the court will conduct a hearing to determine ownership.
7. The plaintiff shall continue to maintain one of her two life insurance policies, each having $325,000.00 face value, naming the child as primary beneficiary until the child attains 18 years of age and had graduated from high school.
8. The defendant shall continue to maintain $750,000.00 total face value of life insurance, from among his three listed policies as listed on his financial affidavit naming the child as primary beneficiary until the child attains 18 years of age and has graduated from high school.
9. Each party shall be solely responsible for the credit card debt in that party's name.
10. The defendant shall transfer title to the Chevrolet Blazer and Chevrolet Lumina to the plaintiff.
11. Each party shall continue to own, as the party's sole property, the various remaining assets as now titled.
12. The plaintiff is awarded an allowance to prosecute of $20,000.00 payable from defendant's net proceeds he is to receive CT Page 13167 from the sale of the marital home.
13. The court retains jurisdiction to oversee the sale of the marital home (cf. Roberts v. Roberts, 32 Conn. App. 465).
Counsel for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.